William M. Bankston
Suzanne A. Adler
Bankston Gronning Brecht P.C.
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503
Telephone: (907) 276-1711
Email:  wbankston@bgbalaska.com
        sadler@bgbalaska.com
*Attorneys for Plaintiffs*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re<br><br>MOUNTAIN VIEW SPORTS CENTER, INC.<br><br>         Debtor. | Case No. A-20-00053 |
| JANIS G. WILLIAMSON and KIM A. VITT, individually, and as Co-Trustees of the ASHER J. WILLIAMSON REVOCABLE TRUST,<br><br>         Plaintiffs,<br><br>v.<br><br>MOUNTAIN VIEW SPORTS CENTER, INC.<br><br>         Defendant. | Adversary 20-_____ |

**COMPLAINT AND DEMAND FOR DECLARATORY JUDGMENT**

For its Complaint against Mountain View Sports Center, Inc., Plaintiffs Janis G. Williamson and Kim A. Vitt, as co-Trustees of the Asher J. Williamson Revocable Trust, state as follows:

1.    This is an adversary proceeding and demand for declaratory judgment brought pursuant to BR# 7000 (1) and (9).

2.    This action is a core proceeding as defined in 28 U.S.C. 157(b)(2)(C) over which this Court has jurisdiction.

3.    Plaintiffs consent to the jurisdiction of this Court.

COMPLAINT AND DEMAND FOR DECLARATORY JUDGMENT    Page 1 of 13

4. Plaintiffs, Janis Williamson and Kim Vitt, are the Co-Trustees of the Asher J. Williamson Revocable Trust ("Co-Trustees").

5. Defendant, Mountain View Sports Center, Inc. ("Mountain View Sports" or "the Debtor") is an Alaska corporation and a debtor in bankruptcy in Bankruptcy Case A-20-00053 ("the Bankruptcy Case"). The Bankruptcy Case was commenced by the filing of a voluntary petition on February 19, 2020.

6. The Debtor is a business which is owned by John and Julie Staser ("the Stasers"), and their two children, Jake Staser ("Jake") and John Christopher ("JC") Staser. The business was previously owned by Julie Staser's father, Asher J. Williamson ("Asher"), who was married to Julie's mother, Willonette Williamson ("Willo").

7. The Debtor made a claim against the Asher J. Williamson Revocable Trust ("the Trust") on February 27, 2020.

8. The Co-Trustees denied the claim on April 27, 2020. The Court has jurisdiction over the Debtor's claim against the Trust.

9. The claim is an asset of the debtor.

10. Asher purchased Mountain View Sports Center on January 1, 1969.

11. Prior to Asher's purchase of Mountain View Sports, he had been employed as a manager at Mountain View Sports for several years.

12. On or about June 2000, the Stasers purchased the controlling interest in Mountain View Sports Center, Inc. ("Mountain View Sports").

13. The Stasers purchased the interests of Julie's parents, Asher and Willo.

14. The Stasers represent that in 2000 they purchased the controlling interest in Mountain View Sports from Asher and Willo for $968,000.

15. The amount that the Stasers paid to purchase Mountain View Sports is disputed.

16. Julie Staser recently filed a related lawsuit against the Trust and the Co-Trustees, individually, in Alaska Superior Court (Case No. 3AN-20-5043 CI).

Bankston Gronning Brecht P.C.
Attorneys at Law
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503
Tel. (907) 276-1711 - Fax (907) 279-5358

17. In this matter, Ms. Staser represented that Mountain View Sports was purchased for $968,000.

18. Upon information and belief, the Stasers jointly acquired and owned 86% of the stock in Mountain View Sports in June 2000.

19. Asher and Willo's grandson, Alan Jack Williamson ("Alan"), owned 13% of Mountain View Sports.

20. Upon information and belief, after the Stasers purchase of the controlling interest in Mountain View Sports, the Stasers transferred 12% of the stock to each of their children, Jake and JC.

21. From January 1, 1969 until the sale of the controlling interest in Mountain View Sports to the Stasers in June 2000, Asher managed and grew Mountain View Sports into a successful and profitable business.

22. After the Stasers purchased Mountain View Sports in June 2000, Asher continued to work at the store, but he declined to receive any salary for his efforts.

23. On or about September 10, 2004, Julie Staser left a voicemail on Asher and Willo's answering machine, and ordered Asher to pack up his desk and remove his personal effects from the store.

24. In this voicemail, Julie indicated to Asher that it was "just not gonna be possible to work with you in my life here."

25. In this voicemail, Julie expressed her intention to begin working at Mountain View Sports on a more permanent basis.

26. Upon information and belief, Asher packed up his desk and belongings shortly after this voicemail was left on or about September 10, 2004.

27. Julie's September 2004 voicemail to Asher terminated Asher's involvement with Mountain View Sports.

28. After September 2004, Asher did not retain keys to Mountain View Sports, and he was not authorized to access the premises as a former owner or employee.

Bankston Gronning Brecht P.C.
Attorneys at Law
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503
Tel. (907) 276-1711 - Fax (907) 279-5358

29. Julie Staser's decision to direct Asher to "pack up [his] desk" was very hurtful to Asher.

30. Upon information and belief, Asher never stepped foot in Mountain View Sports again after September 2004.

31. After September 2004, Asher has no access to the inventory, financial documents, bills, or areas that are off limits to other Mountain View Sports customers.

32. Asher occasionally received information about Mountain View Sports at family functions and through word of mouth.

33. The Stasers, and their two sons, Jake and JC, continued to own 86% of Mountain View Sports until about September 2007.

34. As the controlling shareholders of Mountain View Sports, the Stasers made the vast majority, if not the entirety, of the business decisions pertaining to Mountain View Sports.

35. On or about September 2007, the Stasers purchased Alan's 13% interest in Mountain View Sports, the terms of which were and remain confidential.

36. Since September 2007 onward, the Stasers, and their sons, Jake and JC, have owned 100% of the shares in Mountain View Sports.

37. Since September 2007, all of the decisions pertaining to the management of Mountain View Sports were made exclusively by the Staser family.

38. After the Stasers' purchase of the controlling interest in Mountain View Sports, the Stasers relationship with Asher and Willo deteriorated and the Stasers did not keep frequent contact with Asher and Willo.

39. During this time, Julie Staser left her parents voicemails and sent cards to her parents regarding various matters pertaining to her childhood, the purchase of Mountain View Sports, and the relationship with her siblings, among other things.

40. Willo and Asher retained copies of these notes and voicemails.

41. Willo passed away on May 20, 2016 at the age of 95. Julie did not see Willo during the last few years of her life.

Bankston Gronning Brecht P.C.
Attorneys at Law
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503
Tel. (907) 276-1711 - Fax (907) 279-5358

COMPLAINT AND DEMAND FOR DECLARATORY JUDGMENT                    Page 4 of 13

42. Julie did not attend Willo's funeral.

43. Upon information and belief, Julie saw Willo on a single occasion between July 2005 and her death on May 20, 2016.

44. Prior to this visit, Julie last saw Willo at her brother's funeral in July 2005.

45. After Julie failed to attend Willo's funeral, her relationship with Asher did not improve.

46. Upon information and belief, Julie failed to visit or have any meaningful relationship with Asher during the last few years of his life.

47. On October 5, 2019, Asher passed away at the age of 97. Julie did not attend Asher's funeral.

48. During their lives, Asher and Willo respectively created the Asher J. Williamson Revocable Trust and the Willonette J. Williamson Revocable Trust (collectively "the Trusts").

49. Both of the Trusts mirrored the other and had identical operative terms.

50. Asher and Willo amended the Trusts on three occasions: April 11, 2003, February 3, 2015, and October 22, 2015. Again, Willo's and Asher's amendments to the Trusts mirrored the others.

51. Upon Willo's death, all assets in the Willonette J. Williamson Revocable Trust transferred to the Asher J. Williamson Revocable Trust ("the Trust").

52. During their lifetimes, Asher and Willo executed pour-over wills which deeded all their remaining possessions to their respective Trust.

53. On November 3, 2019, notice to creditors was first published in the *Anchorage Daily News*. Notice was published for the weeks of November 3, 10, and 17, 2019.

54. The notice to creditors specified that all claims against the Trust would be forever barred if they were not submitted within four months (or March 3, 2020) after the date of the first publication of the notice.

Bankston Gronning Brecht P.C.
Attorneys at Law
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503
Tel. (907) 276-1711 - Fax (907) 279-5358

55. On February 27, 2020 John Staser submitted a claim in the amount of $767,943.00, on behalf of Mountain View Sports ("the Mountain View Sports Claim").

56. Mountain View Sports Claim letter is executed by John Staser, the Corporate Secretary of Mountain View Sports.

57. A copy of the Mountain View Sport Claim is attached hereto as **Exhibit 1**.

58. The Mountain View Sports Claim stated, in relevant part:

> It has recently come to my attention that Mr. Asher J. Williamson (Asher) participated in a conspiracy to commit fraud and other fraudulent behavior against Mountain View Sports from 2000 to 2005. Evidently, Asher owned and financed a distribution company known as the Beason Company during these years. He conspired with Mr. Alan Jack Williamson (Alan) his grandson to defraud Mountain View Sports.
>
> . . .
>
> The Beason Company was used as a front to steal guns, cash, and other merchandise from Mountain View Sports and to distribute the spoils to other relatives and friends. The details of the theft are well documented. What wasn't known until recently was the role that Asher Jack Williamson played as lender, owner, and financier of the operation.[1]

59. The Mountain View Sports Claim alleges that these causes of action arose between 2000 and 2005.

60. The Mountain View Sports Claim alleges claims of "unjust enrichment, breach of covenant of good faith and fair dealing, non-disclosure, intentional and negligent misrepresentation, conversion, and fraud."[2]

61. The Mountain View Sports Claim alleges that Mountain View Sports has claims against the Trust for various causes of action arising out of contract and tort law.

62. On April 27, 2020, Kim Vitt and Janis Williamson, as Co-Trustees of the Trust, disallowed the Mountain View Sports Claim.[3]

---

[1] Mountain View Sports Claim Letter, pp.1-2.
[2] *Id.* at p.2.
[3] A copy of the Notice of Disallowance of Claim is attached hereto as **Exhibit 2**.

Bankston Gronning Brecht P.C.
Attorneys at Law
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503
Tel. (907) 276-1711 - Fax (907) 279-5358

63. As provided in the Notice of Disallowance of Claim, Mountain View Sports had sixty days, or until June 26, 2020, to petition to allow the claim.

64. On or about February 19, 2020, Mountain View Sports filed for bankruptcy in the Federal District Court for the District of Alaska. On that same day, Mountain View Sports filed its Asset and Debt Schedules.

65. The Mountain View Sports Claim is not included on the Asset Schedule.

66. The claim is not owed to John Staser, or any other Staser, individually.

67. Pursuant to AS 09.10.070, all tort actions must be filed within "two years of accrual of the cause of action."[4]

68. AS 09.10.053 requires that claims which are based on either express or implied contract be filed within three years of the date that the claim accrued, unless a separate statute of limitations is imposed by an express contract.[5]

69. The question of when a claim begins to accrue is a question of fact, which is resolved by the application of the "discovery rule."

70. The Alaska Supreme Court has formally adopted the "discovery rule," and described such as follows, "According to the best formulation of [the discovery rule], the statute of limitations does not begin to run until the client discovers, or reasonably should discover, the existence of all elements of his cause of action."[6]

71. The Alaska Supreme Court has recognized that the "discovery rule may provide different possible dates on which a statute of limitations can begin to run."[7] The Alaska Supreme Court described these two dates as follows:

> First is the inquiry-notice date, 'the date when the plaintiff has information which is sufficient to alert a reasonable person to begin an inquiry to protect his rights.' Second is the actual-notice date,

---

[4] AS 09.10.070 (a).
[5] AS 09.10.053.
[6] *Cameron v. State*, 822 P.2d 1362, 1368 (Alaska 1991).
[7] *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1276 (Alaska 2013).

Bankston Gronning Brecht P.C.
Attorneys at Law
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503
Tel. (907) 276-1711 - Fax (907) 279-5358

'the date when [the] plaintiff reasonably should have discovered the existence of all essential elements of the cause of action.'[8]

72. The Alaska Supreme Court has determined that the statute of limitations begins to run on the date that a party receives "inquiry notice."[9]

73. When a party is aware of their injury, they have "an affirmative duty to investigate all potential causes of action before the statute of limitations expires (emphasis added)."[10]

74. When a party is aware of injury caused by one party, they have an affirmative duty to investigate whether or not other individuals are potentially liable for the injury caused by the known party.[11]

75. The party's inquiry "must be prompt and diligent" upon receiving notice of the injury.[12]

76. The Stasers were aware of the Mountain View Sports Claim well before February 27, 2020.

77. The Stasers were aware of the damage and losses allegedly attributable to the Beason Company, Alan, and now Asher, as early as September 2004.

78. There is no dispute that Mountain View Sports was aware of the "embezzle[ment]" no later than May 23, 2013.

79. On May 23, 2013, Julie sent a letter to Asher and Willo, which provided, in relevant part:

> I will never understand why I have been shunned and disowned and dispised [sic]. <u>Is it because I did not want the bankruptcy caused by Jack, Jr. [Alan] and to lose everything and live in a trailer</u>?
> . . .
> <u>Is it because I had to ask dad to use the office in my store to determine why we were running into bankruptcy at a full gallop</u>?

---

[8] *Id.* (internal citations omitted).
[9] *Id.*
[10] *Id.* (internal citations omitted).
[11] *Id.*
[12] *Id.*

Bankston Gronning Brecht P.C.
Attorneys at Law
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503
Tel. (907) 276-1711 - Fax (907) 279-5358

> <u>Jack Jr. [Alan] embezzled an enormous amount of money, 1 half million</u>, the same time we lost over 600k to Sportsmans. He drove new trucks & had his home custom built with store money while our home was old and in desperate need of a remodel and our cars are bought used and have over 100k miles on them. Why was he allowed to do this? <u>I had to audit to discover the theft or we would have never had a chance owing all that money we borrowed to buy the store and using every penny of our hard earned savings. We still owe, all we borrowed!!</u>
>
> I worked 3 jobs and John worked 2 for many, many years. Again- we still owe all the money we borrowed to pay you! Every time I think of how much you all despise me and the horrible things you tell people about me, it is deeply painful [*sic*] (emphasis added).[13]

80. Upon information and belief, Julie's reference to "ask[ing] dad [Asher] to use the office in my store," to investigate financial problems refers to the voicemail that Julie left on Asher's voicemail in September 2004.

81. After Julie directed Asher to pack up his desk and to vacate the store in September 2004, Asher never returned to MVS in any capacity as an employee or maintained a desk in the employee

82. If Julie's decision to direct Asher to vacate the store was related to the "embezzle[ment]," then there is no question that Julie was aware of her injury as early as September 2004.

83. Upon learning of the loss of the funds (*i.e.*, the injury caused by the alleged "embezzle[ment]"), Julie proceeded to "audit" Mountain View Sports between September 2004 and May 2013.

84. Julie audited Mountain View Sports prior to May 2013.

85. Through this audit, Julie was aware of the injury no later than May 2013.

---

[13] A copy of this letter is attached hereto as **Exhibit 3**. The relevant portions of this excerpt appear on pages 2-4.

Bankston Gronning Brecht P.C.
Attorneys at Law
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503
Tel. (907) 276-1711 - Fax (907) 279-5358

86. Julie sent another letter to Asher in May 2013, in which she discussed the alleged embezzlement. In this letter, Julie discusses the fact that she suffers from cluster headaches, and she enclosed a printed article from Wikipedia discussing the condition.

87. In this letter, Julie writes, in relevant part:

> "Episodes occur as a warning of someone trying to harm or back stab Julie – warning of attack. Last episode was when we discovered Jack Jr. embezzeled [sic] aprox. $500,000.00 in three years just as we bought all stock and Sportsman's Warehouse opened. Also Jack was loaned 150K to open a shadow business in our store, Beason Co."[14]

88. Sportsman's Warehouse opened in Anchorage, Alaska in 2004.

89. The Stasers must have learned of the alleged embezzlement between the date of the Stasers' purchase of the controlling shares of Mountain View Sports (June 2000) and the arrival of Sportsman's Warehouse in 2004.

90. In September 2004, John and Julie Staser jointly owned 62% of Mountain View Sports, and theirs sons, Jake and JC, each owned an additional 12%. The Staser family collectively owned 86% of the shares of Mountain View Sports in 2004.

91. In May 2013, Julie owned 38% of the shares in Mountain View Sports, and she was acting as Director and President of the company.

92. The knowledge possessed by Julie Staser is imputed to Mountain View Sports.

93. The entirety of the Mountain View Sports Claim stems from the alleged "embezzle[ment]" engaged in by Asher.

94. Mountain View Sports even states and concedes in its claim that, "the details of this theft are well documented."[15]

---

[14] A copy of this letter is attached as **Exhibit 4**, relevant portions appear on page 6.
[15] **Exhibit 1**, p.2.

Bankston Gronning Brecht P.C.
Attorneys at Law
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503
Tel. (907) 276-1711 - Fax (907) 279-5358

Bankston Gronning Brecht P.C.
Attorneys at Law
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503
Tel. (907) 276-1711 - Fax (907) 279-5358

95. Based on Mountain View Sports' knowledge of the "well documented" claim, it had an affirmative duty to investigate all claims related to this injury, upon learning of the harm.

96. The officers, owners and debtor were was aware of the injury resulting from Asher's alleged "embezzle[ment]" no later than May 23, 2013.

97. As of that date, Mountain View Sports was aware that the loss exceeded $500,000.00.

98. Accordingly, Mountain View Sports had three years from May 23, 2013 to bring any tort claims against Asher.

99. These claims needed to be filed no later than May 23, 2016, under the facts most favorable to Mountain View Sports.

100. Similarly, Mountain View Sports had two years from May 23, 2013 to bring any breach of contract claims against Asher.

101. These claims needed to be filed no later than May 23, 2015, under the facts most favorable to Mountain View Sports.

102. Mountain View Sports did not timely file its claims on February 27, 2020, and therefore the Mountain View Sports Claim is barred by the statute of limitations.

103. Mountain View Sports was never owned by the Trust.[16]

104. It was owned by Asher and Willo, individually.

105. Asher and Willo sold the Stasers the controlling interest in Mountain View Sports in June 2000. As of September 2004, Asher had little, if anything, to do with the management, finances, and practices of Mountain View Sports.

106. Fifteen years after Asher was told to vacate the Mountain View Sports' store, Mountain View Sports is seeking to collect over $700,000 from the Trust.

---

[16] The Co-Trustees acknowledge that Mountain View Sports may have a claim against the Trust, pursuant to AS 13.36.368. This matter has not been raised before the Court, and the Co-Trustees reserve all right to contest Mountain View Sport's ability to bring a claim against the Trust.

COMPLAINT AND DEMAND FOR DECLARATORY JUDGMENT                Page 11 of 13

107. The application of the statute of limitations involves fundamental policy concerns.

108. The statute of limitations "serve dual policies: to protect against prejudice from stale claims and to ensure an adequate opportunity for filing a claim prior to the statutory bar."[17]

109. The Trust is prejudiced by Mountain View Sports' intentional decision to wait more than 15-20 years from the date the injury allegedly occurred to file its claim.

110. Mountain View Sports was aware of the injury no later than May 2013.

111. Mountain View Sports was aware of this claim on or before January 1, 2005.

112. The prejudice to the Trust, as a result of Mountain View Sport's delay, cannot be overstated.

113. This delay is directly what the statute of limitations was designed to prevent. and therefore the Court must find that the Mountain View Sports Claim is forever barred by the statute of limitations.

WHEREFORE, the Co-Trustees pray for the following relief:

1. A declaratory judgment determining that the Mountain View Sport's Claim is barred by the statute of limitations;

2. An order that the claim is owned by the debtor, and not the shareholders;

3. An award of attorney's fees and costs for the filing of the instant matter; and

4. The Court should rule that the Mountain View Sports Claim is forever barred by the statute of limitations.

DATED at Anchorage, Alaska this 28th day of May, 2020.

---

[17] *Long v. Holland America Westtours, Inc.*, 26 P.3d 430, 434 (Alaska 2001).

Bankston Gronning Brecht P.C.
Attorneys at Law
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503
Tel. (907) 276-1711 - Fax (907) 279-5358

M. GREGORY OCZKUS
Co-Counsel for Plaintiffs

By: /s/ M. Gregory Oczkus
    M. Gregory Oczkus
    Alaska Bar No. 7710145
    gregmgolawoffice@yahoo.com

BANKSTON GRONNING BRECHT P.C.
Co-Counsel for Plaintiffs

By: /s/ William M. Bankston
    William M. Bankston
    Alaska Bar No. 7111024
    wbankston@bgbalaska.com

By: /s/ Suzanne A. Adler
    Suzanne A. Adler
    Alaska Bar No. 1612113
    sadler@bgbalaska.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing (typed in Times New Roman, 13 pt.) was mailed and emailed on the 28th day of May, 2020 to the following:

Cabot Christianson
911 West 8th Avenue, Suite 201
Anchorage, Alaska 99501

/s/
Legal Assistant
W5054\1\PLEADINGS\DEMAND

COMPLAINT AND DEMAND FOR DECLARATORY JUDGMENT     Page 13 of 13

Bankston Gronning Brecht P.C.
Attorneys at Law
188 W. Northern Lights Blvd., Suite 1020
Anchorage, Alaska 99503
Tel. (907) 276-1711 - Fax (907) 279-5358